# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JUSTIN THOMAS BEALL,

        Defendant-Appellant.

UNPUBLISHED
September 18, 2018

No.  339054
Berrien Circuit Court
LC No.  2015-015254-FH

---

Before:  MURRAY, C.J., and CAMERON and LETICA, JJ.

PER CURIAM.

Defendant, Justin Thomas Beall, appeals by delayed leave granted[1] his sentence following his guilty plea to violating the terms of his probation imposed after his plea-based conviction of larceny in a building.  See MCL 750.360.  The trial court revoked Beall's probation and sentenced him to serve 24 to 48 months in prison.  We affirm.

Beall lived in an adult foster-care home while on probation.  According to a probation violation report, the police were contacted after a staff member entered the bedroom of a resident who suffered from dementia and discovered Beall with his shorts dropped down to his ankles, standing a few feet away from the other resident.  When the staff member asked the resident what was happening, the resident pointed to Beall's penis.  The resident became confused during his conversation with the responding police officer and began talking about an earlier instance of sexual assault perpetrated by yet another resident the previous month.  However, the victim eventually indicated that Beall made him perform fellatio and was "playing with himself."

Beall was arrested for violating his probation by engaging in assaultive, abusive, threatening, or intimidating behavior.  The trial court held a probation violation hearing at which Beall pleaded guilty to the violation.  The trial court imposed a sentence of imprisonment that exceeded the recommended minimum sentence range for Beall's underlying larceny conviction by seven months.  Beall later moved to withdraw his plea and to correct his minimum sentence, but the trial court denied the motion.  Beall now appeals.

---

[1] *People v Beall*, unpublished order of the Court of Appeals, entered October 6, 2017 (Docket No. 339054).

-1-

Beall first argues that he was sentenced based on inaccurate information in his presentence investigation report (PSIR) and probation violation report, resulting in an unreasonable and disproportionate upward departure sentence. We disagree.

We review a trial court's resolution of a challenge to the accuracy of information in a PSIR for an abuse of discretion. *People v Lucey*, 287 Mich App 267, 275; 787 NW2d 133 (2010). A trial court abuses its discretion when it chooses an outcome falling outside the range of principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). We review departure sentences for reasonableness, *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015), and the trial court's determination of reasonableness for an abuse of discretion, *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017). A departure sentence is reasonable if it is "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Id*. (quotation marks and citation omitted).

While trial courts are no longer obligated to find a substantial and compelling reason to depart from the minimum sentence range as calculated under the statutory sentencing guidelines, the trial courts are still required to score and consider the guidelines when imposing a sentence. *Lockridge*, 498 Mich at 391-392. When calculating the sentencing guidelines range, a trial court may consider all record evidence, including the contents of a PSIR and admissions from plea proceedings. *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012). A PSIR "is presumed to be accurate and may be relied on by the trial court unless effectively challenged by the defendant." *People v Callon*, 256 Mich App 312, 334; 662 NW2d 501 (2003).

Beall contends that the trial court determined his sentence based on purported inaccuracies in the PSIR and probation violation report and on the trial court's confusion regarding Beall's conduct and admissions. We disagree.

Beall did not challenge the accuracy of the PSIR at his initial sentencing for the underlying larceny offense or his sentencing following his guilty plea for violating his probation. At the latter hearing, Beall affirmatively stated that the probation violation report required no correction. Instead, Beall raised his claim of inaccuracies in these documents for the first time in his motion to withdraw his plea and to correct his sentence. There, as here, Beall claimed that the reports contained inaccurate statements regarding his history of community supervision, mental health treatment, and use of illegal drugs and alcohol. According to Beall, the trial court's reliance on these inaccurate statements resulted in an invalid sentence. However, as the trial court correctly noted in denying Beall's motion, Beall presented no evidence of inaccuracies.[2] In other words, he failed to carry the burden of establishing an effective challenge to the reports. *People v Lloyd*, 284 Mich App 703, 705; 774 NW2d 347 (2009). Accordingly,

---

[2] The only evidence provided in Beall's motion was the probation violation report itself. To the extent that the lower court file already contained records from Beall's probation review hearings, a number of which stated "good report" in the area designated for additional information, those records do not undermine the probation officer's report that Beall had a poor history of community supervision because Beall had previously violated the terms of probation imposed in connection with past offenses.

the contents of the reports were presumptively accurate, *Callon*, 256 Mich App at 334, and the trial court did not abuse its discretion by declining to resentence Beall on the basis of his unsupported claim of inaccuracies.

Beall also contends that the trial court confused and misunderstood the facts underlying his probation violation. By way of example, Beall notes that the trial court incorrectly referred to the elderly victim as a young man and relied upon Beall's own false, coerced admissions. To the extent that Beall argues that the trial court relied on inaccurate admissions he made in pleading guilty to the probation violation, we find his argument unpersuasive. Beall's sworn testimony included an affirmation that he chose to plead guilty of his own volition. While it is true that Beall initially denied exposing his genitals to the victim, he acknowledged that conduct after consulting with counsel and after the trial court reiterated that he had the right to a full hearing on the matter if he did not wish to plead guilty. To permit Beall to now deny the accuracy of admissions he made under oath, and after having been advised of the possible consequences of a guilty plea, would be contrary to public policy. See *People v White*, 307 Mich App 425, 430-431; 862 NW2d 1 (2014).[3] We will not fault the trial court for rejecting Beall's attempt to refute his earlier admissions.

With respect to Beall's complaint concerning the trial court's reference to the victim as a young man, the victim's age is not apparent from the record. However, the trial court's understanding of the victim's age was supported by Beall's own testimony: Beall answered in the affirmative when the trial court asked if he was facing the "young man" while his genitals were exposed. In any event, the trial court's later emphasis on the vulnerability of the victim was reasonable regardless of the victim's age, as it is undisputed that the victim suffered from dementia and had been assaulted by another resident shortly before the events at issue in this case.

Having determined that Beall failed to establish that the trial court relied upon inaccurate information, we turn to his argument regarding the proportionality of his sentence. Recently, in

---

[3] In *White*, 307 Mich App at 428-429, the trial court denied the defendant's request for an evidentiary hearing as to the voluntariness of his plea and the effectiveness of his counsel, which the defendant supported with affidavits contradicting his previous testimony. In affirming the defendant's convictions and sentences, this Court reasoned that the trial court properly relied on the following rationale expressed in *People v Serr*, 73 Mich App 19; 250 NW2d 535 (1976):

> It is the opinion of this court that where a defendant has been found guilty by reason of his own statements as to all of the elements required to be inquired into by GCR 1963, 785.7, and his attorney has also confirmed the agreement and the defendant has been sentenced, neither he nor his attorney will be permitted thereafter to offer their own testimony to deny the truth of their statements made to induce the court to act. To do so would be to permit the use of its own process to create what amounts to a fraud upon the court. This is based on public policy designed to protect the judicial process. [*White*, 307 Mich App at 430-431, quoting *Serr*, 73 Mich App at 28.]

*People v Dixon-Bey*, 321 Mich App 490, 524-525; 909 NW2d 458 (2017),[4] this Court provided additional guidance for determining whether a departure sentence satisfies the principle of proportionality, stating:

> Because the guidelines embody the principle of proportionality and trial courts must consult them when sentencing, it follows that they continue to serve as a "useful tool" or "guideposts" for effectively combating disparity in sentencing. Therefore, relevant factors for determining whether a departure sentence is more proportionate than a sentence within the guidelines range continue to include (1) whether the guidelines accurately reflect the seriousness of the crime, (2) factors not considered by the guidelines, and (3) factors considered by the guidelines but given inadequate weight. When making this determination and sentencing a defendant, a trial court must " 'justify the sentence imposed in order to facilitate appellate review,' " which "includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." [Citations omitted.]

In this case, the trial court considered Beall's lengthy criminal history and the gravity of the conduct surrounding his probation violation. The record establishes that Beall admitted to engaging in assaultive, abusive, threatening, or intimidating behavior by exposing his genitalia in close proximity to the face of a man he knew suffered from a mental condition. The trial court considered the minimum sentence range provided by the sentencing guidelines but reasoned that imposing a sentence within the range would not account for Beall's admitted victimization of the vulnerable resident without regard for his mental condition. Because the sentencing guidelines did not account for Beall's egregious misconduct involved in the probation violation, the trial court exercised its discretion and declined to impose its sentence based on the guidelines.

The trial court explained that the sentencing guidelines failed to adequately and accurately reflect the seriousness of Beall's conduct because it merely reflected consideration of his underlying conviction of larceny from a building. The trial court correctly understood that, pursuant to *People v Schaafsma*, 267 Mich App 184, 185-186; 704 NW2d 115 (2005), it could consider Beall's verified probation violation and impose an upward departure from the sentencing guidelines because such violations represent "an affront to the court and an indication of an offender's callous attitude toward correction and toward the trust the court has granted the probationer."

---

[4] We acknowledge our Supreme Court has ordered briefing and argument in part to address "to what extent the sentencing guidelines should be considered to determine whether the trial court abused its discretion in applying the principle of proportionality under" *Steanhouse*. *People v Dixon-Bey*, ___ Mich ___; 910 NW2d 303 (2018). At present, we are bound by our Court's published opinion. See MCR 7.215(J)(1) ("A panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990 . . . .")

The trial court was not required to disregard Beall's probation violation. We believe that the trial court properly considered the seriousness of Beall's probation violation and concluded, based on Beall's criminal history, underlying conviction, and failed probation, that the sentencing guidelines inadequately protected the public and failed to provide an appropriate punishment for Beall. Under the circumstances of this case, the trial court's departure sentence was reasonable and well supported by the evidence in the record. Beall has not established that the upward departure fell outside the range of principled outcomes. *Babcock*, 469 Mich at 269. Therefore, we hold that the trial court did not abuse its discretion by upwardly departing from the sentencing guidelines minimum range by seven months because the sentence satisfied the principle of proportionality. See *Steanhouse*, 500 Mich at 459-460; *Dixon-Bey*, 321 Mich App at 524-525.

Beall also argues that the trial court erred by accepting his guilty plea and by not allowing him to withdraw it because he lacked mental competency to make the plea and his defense counsel provided ineffective assistance. We disagree.

A trial court's ruling on a motion to withdraw a plea is reviewed for an abuse of discretion. *People v Brown*, 492 Mich 684, 688; 822 NW2d 208 (2012). A claim of ineffective assistance of counsel "presents a mixed question of fact and constitutional law." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). This Court reviews the trial court's findings of fact, if any, for clear error, and reviews de novo its conclusions of law. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). A trial court abuses its discretion when it chooses an outcome falling outside the range of principled outcomes. *Babcock*, 469 Mich at 269. "Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *Armstrong*, 490 Mich at 289.

Pursuant to MCR 6.445(F), a probationer may plead guilty to violating the terms of his or her probation. Before accepting a guilty plea, the court must:

> (1) advise the probationer that by pleading guilty the probationer is giving up the right to a contested hearing and, if the probationer is proceeding without legal representation, the right to a lawyer's assistance as set forth in subrule (B)(2)(b),
>
> (2) advise the probationer of the maximum possible jail or prison sentence for the offense,
>
> (3) ascertain that the plea is understandingly, voluntarily, and accurately made, and
>
> (4) establish factual support for a finding that the probationer is guilty of the alleged violation. [MCR 6.445(F)(1) through (4).]

Once the trial court has accepted a defendant's plea, there is no absolute right to withdraw the plea. *People v Patmore*, 264 Mich App 139, 149; 693 NW2d 385 (2004). A defendant who moves to withdraw a plea "must demonstrate a defect in the plea-taking process." *People v Pointer-Bey*, 321 Mich App 609, 615-616; 909 NW2d 523 (2017) (quotation marks and citation omitted).

In this case, review of the probation violation plea proceeding as a whole does not reveal a defect in the plea-taking process. Beall reviewed and signed an advice of rights form explaining that he would give up the right to a probation violation hearing by pleading guilty. Beall confirmed that counsel reviewed the form with him and "thoroughly" advised him of his rights. The trial court advised Beall that he faced potential revocation of his probation and a maximum four-year sentence. Among other things, Beall also affirmed that he understood the nature and consequences of the proceeding; that he was satisfied with counsel's performance; that he had been diagnosed with attention deficit hyperactivity disorder and bipolar disorder, but felt capable of thinking clearly and making good decisions; that he was not suffering from any other condition or under the influence of any substance that would impair his ability to understand what was happening; and that he had not been threatened, coerced, or improperly lured into making his plea. Beall unequivocally agreed that he believed that he was guilty of the charged probation violation and he made his plea freely of his own choice.

After establishing that Beall was acting of his own free will and with a full understanding of his rights, the trial court questioned Beall regarding the probation violation in order to establish a factual basis for the plea. Beall stated that he and the victim, who he knew suffered from dementia, were in the victim's bedroom with the door closed. Beall further testified that his pants were down when a staff member entered the room. When asked what he was doing to the victim just before the staff member arrived, Beall answered, "Standing there," and added, "I did not expose myself." The trial court explained that the terms of his probation did not bar him from merely standing next to another person and allowed Beall to consult with defense counsel off the record. The trial court then reminded Beall that he had the right to an evidentiary hearing and advised he would need to testify to facts that constituted a probation violation if he still wanted to plead guilty. Beall said he understood and then proceeded to admit that he exposed his genital area to the victim, though he denied any physical contact. Given the court's clear compliance with MCR 6.445(F), we conclude that it did not err by denying Beall's motion to withdraw his guilty plea.

Likewise, we find no merit in Beall's argument that he was denied the effective assistance of counsel. A defendant raising a claim of ineffective assistance of counsel bears the burden of establishing that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001) (quotation marks and citation omitted). Under Michigan law, "[e]ffective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). Defense counsel's performance must be measured against an objective standard of reasonableness and without the benefit of hindsight. *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999). "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy . . . ." *Id*. at 76.

Beall's various arguments concerning defense counsel's performance fall into three general categories: (1) failure to investigate or raise Beall's competency, as well as the competency of the victim; (2) failure to consider and investigate the implications of Beall's mental health, including the availability of an insanity defense; and (3) coercing Beall's

-6-

admissions despite his lack of capacity to understand the factual basis for his plea or how those facts related to the law. Beall has not demonstrated entitlement to relief, as he has failed to rebut the presumption of effective assistance, *Solmonson*, 261 Mich App at 663, or establish the factual predicate for these claims, *Carbin*, 463 Mich at 600.

First, there is simply no evidence that Beall was incompetent or otherwise incapable of understanding the nature of the proceedings. To the contrary, the record suggests that Beall presented as a rational and aware individual who had been fully advised of, and understood, his rights. He agreed that he was thinking clearly and understood the reason for the hearing. In fact, he asked the court to repeat certain questions he did not understand, which showed that he was focused and involved with the proceedings and both willing and able to speak up when he required clarification. Further, his initial testimony stating that he did not expose himself to the victim suggests that he was not merely agreeing with the court's questions as a matter of course. After acknowledging that he did, in fact, expose his genitals to the victim, he also clarified that he did not touch the victim, again demonstrating that he understood the importance of providing clear and accurate admissions. Furthermore, it is evident that counsel was fully aware of Beall's background and mental health diagnoses, as counsel referred to those issues before the court announced its sentence.

With respect to defense counsel's investigation of the victim's competency, the extent of any such investigation is not apparent from the record. Nonetheless, it was undisputed that the victim suffered from dementia, from which we can infer that the victim's credibility would almost certainly have been at issue if a contested hearing had taken place. However, the victim's allegations would have been corroborated by the foster-care worker who entered the room and discovered Beall with his pants down. In light of the lower preponderance-of-the-evidence standard of proof applicable to the determination of whether a probation violation occurred, *People v Breeding*, 284 Mich App 471, 487; 772 NW2d 810 (2009), counsel could have reasonably concluded that the evidence was sufficient for the trial court to find Beall guilty of the probation violation.

The record also lacks any evidence that defense counsel failed to adequately investigate or consider the availability of an insanity defense in light of Beall's mental health deficiencies. Beall testified about his mental health disorders and both diagnoses were identified in the PSIR counsel reviewed before the hearing. But as our Supreme Court explained, a person can be mentally ill without being legally insane, *People v Toma*, 462 Mich 281, 318; 613 NW2d 694 (2000), and a criminal defendant cannot rely on mental abnormalities short of legal insanity to avoid or reduce criminal responsibility, *People v Carpenter*, 464 Mich 223, 226; 627 NW2d 276 (2001). A defendant asserting an insanity defense has the burden of proving, by a preponderance of the evidence, that "as a result of mental illness or being mentally retarded as defined in the mental health code, [MCL 330.1001 *et seq*.,] the defendant lacked 'substantial capacity either to appreciate the nature and quality or the wrongfulness of his or her conduct or conform his or her conduct to the requirements of the law.' " *Id*. at 231, quoting MCL 768.21a(1). See also MCL 768.21a(3) (regarding burden of proof).

Counsel could have reasonably concluded from the available evidence that Beall would be unable to meet this high standard. Immediately after being discovered in the victim's room with his pants down, Beall told the staff member that he was not doing anything sexual and that

his shorts simply fell down when he was assisting the victim was an innocuous task. Beall's prompt exculpatory statement suggests that he was aware of the wrongfulness of his actions. In addition, counsel may have inferred from the gradually increasing length of time between each of the four most recent offenses in Beall's criminal history and the 16 months of probation that he had successfully completed before this incident that Beall was, in fact, capable of conforming his conduct to the requirements of the law. Under these circumstances, we will not find counsel's failure to raise an insanity defense objectively unreasonable merely because Beall suffered mental health disorders for which he was receiving medication.

Lastly, for the reasons already explained throughout this opinion, we find no evidence that defense counsel coerced Beall's admissions or that Beall lacked the capacity to understand the factual basis for his plea or the legal repercussions of pleading guilty to the probation violation. Therefore, Beall has failed to overcome the presumption that defense counsel provided effective assistance of counsel. *Solmonson*, 261 Mich App at 663.

In sum, Beall was repeatedly advised of his rights; he was aware that he could be sentenced to a maximum term of four years' imprisonment if he pleaded guilty to the probation violation; he opted to admit facts from which the court could find that he committed a probation violation, rather than have the matter determined at a later hearing; and appeared to participate in the proceedings in a rational state of mind and of his own volition. We hold that the trial court correctly ruled that Beall knowingly and voluntarily pleaded guilty to violating the terms of his probation and properly refused to allow him to withdraw it. The record establishes that Beall competently, knowingly, and voluntarily made a valid plea and defense counsel provided him effective assistance of counsel. Accordingly, Beall has not presented meritorious claims of error, nor established entitlement to appellate relief.

Affirmed.

/s/ Christopher M. Murray
/s/ Thomas C. Cameron
/s/ Anica Letica

-8-