*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CHAD MICHAEL VANEPPS,

        Defendant-Appellant.

UNPUBLISHED
November 21, 2023

No. 365294
Ingham Circuit Court
LC No. 21-000255-FH

Before: HOOD, P.J., and JANSEN and FEENEY, JJ.

PER CURIAM.

Following a plea of guilty to one count of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) and (2)(b) (sexual contact with victim less than 13 years of age; defendant 17 years of age or older), defendant was sentenced as a third-offense habitual offender, MCL 769.11, to serve 365 days in jail, followed by 60 months of probation. After defendant violated the terms of his probation, the trial court revoked defendant's probation and resentenced defendant to serve 15 to 30 years' imprisonment, a 12-year upward departure from the applicable guidelines range. Defendant appeals his sentence by leave granted.[1] We conclude that the trial court failed to articulate why the sentencing guidelines did not adequately account for the penetration that occurred, the victim's psychological injuries, and defendant's exploitation of the victim's mental disabilities, and we remand for the trial court to either resentence defendant or further articulate its reasoning for imposing the departure sentence.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

The victim in this case was defendant's former girlfriend's 11-year-old daughter, who is mentally challenged and has learning disabilities. From 2018 to 2019, the victim lived with

---

[1] *People v VanEpps*, unpublished order of the Court of Appeals, entered April 18, 2023 (Docket No. 365294).

defendant and her mother. After the victim's mother passed away, the victim went to live with her father.

In November 2020, the victim disclosed to family members that defendant had sexually abused her by penile-vaginal penetration on several occasions. A forensic interview was completed, and the victim reported that defendant raped her several times when she was sleeping. In the first incident, the victim woke up, on her back, with a sharp pain in her stomach from "defendant putting his 'thingy inside' her." The victim noted that her mother found defendant in her bedroom the next morning, and defendant stated that he was giving the victim "a tickle-itch." The victim reported that defendant would come into her room and "put his thingy in her a lot." The victim clarified that "thingy" was a reference to a boy's private part, and that "inside me" meant "inside my stomach." When defendant was initially interviewed, he denied engaging in sexual activity with the victim. However, during a later polygraph examination, defendant admitted that he touched the victim's bare vagina twice, in her bedroom.

Defendant was originally charged with two counts of CSC-II as a third-offense habitual offender. In exchange for defendant pleading guilty to one count of CSC-II and to the third-offense habitual offender enhancement, the prosecutor dismissed one count of CSC-II and agreed to a minimum guidelines range of 12 to 36 months with a "county-jail cap." At the sentencing hearing, the trial court sentenced defendant to 365 days in jail, followed by 60 months of probation. The court explained the conditions of defendant's probation and explained to defendant that he "must not have verbal, written, electronic, or physical contact with any individual age 17 or under or attempt to do so either directly or through another person."

Defendant violated his probation by having contact with two minor children, by being in the company of someone who had a felony record, and by having video contact with a minor child while in jail. Defendant entered a guilty plea to the probation violations concerning contact with minor children, and the additional probation violation charge was dismissed. The trial court revoked defendant's probation, departed from the recommended guidelines range of 12 to 36 months, and sentenced defendant to serve 15 to 30 years' imprisonment for the CSC-II conviction.

II. ANALYSIS

Defendant argues that the trial court abused its discretion by departing from the advisory guidelines range of 12 to 36 months and imposing a minimum term of 15 years' imprisonment on the basis of factors that were given adequate weight by the guidelines. We conclude that the trial court did not sufficiently justify its sentencing decision and, therefore, we remand for the trial court to either resentence defendant or further articulate its justification for the sentence imposed.

We review a sentence that departs from the applicable sentencing guidelines range for reasonableness. *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). "[T]he standard of review to be applied by appellate courts reviewing a sentence for reasonableness on appeal is abuse of discretion." *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017) (*Steanhouse II*). "A trial court abuses its sentencing discretion when the sentence imposed by the trial court is disproportionate to the seriousness of the circumstances involving the offense and the offender." *People v Dixon-Bey*, 340 Mich App 292, 296; 985 NW2d 904 (2022) (*Dixon-Bey II*). Additionally, "[t]he existence of a departure factor is a factual question reviewed for clear error on appeal." *Id*.

Clear error is present when this Court "is left with a definite and firm conviction that an error occurred." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015) (quotation marks and citation omitted).

When a trial court imposes a departure sentence, it must "justify the sentence imposed in order to facilitate appellate review," *Lockridge,* 498 Mich at 392, and explain "why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been," *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017) (*Dixon-Bey I*) (quotation marks and citation omitted). In reviewing a departure sentence, this Court "must evaluate whether reasons exist to depart from the sentencing guidelines and whether the extent of the departure can satisfy the principle of proportionality." *People v Steanhouse (On Remand)*, 322 Mich App 233, 239; 911 NW2d 253 (2017) (*Steanhouse I*) (emphasis omitted), vacated in part on other grounds 504 Mich 969 (2019).

In this case, the trial court identified several appropriate factors for the departure sentence. The trial court referred to defendant's criminal history for CSC offenses, and the court opined that defendant did not take advantage of or benefit from previous programming. The court concluded that it would not be protecting society if it let defendant out. A defendant's extensive criminal history and likelihood to reoffend are appropriate considerations supporting a departure sentence. See *People v Odom,* 327 Mich App 297, 318; 933 NW2d 719 (2019). Furthermore, "a trial court has been given broad discretion, within limits fixed by law, to tailor a sentence to the circumstances of each case and each offender, in an effort to balance society's need for protection against its interest in rehabilitation of the offender." *People v Sabin (On Second Remand)*, 242 Mich App 656, 661; 620 NW2d 19 (2000).

Next, the trial court considered defendant's probation violations, and the court determined that defendant needed more punishment and more help. Our Supreme Court has determined that "a defendant's conduct while on probation" may constitute an appropriate justification for departing from the applicable guidelines range. *People v Hendrick*, 472 Mich 555, 565; 697 NW2d 511 (2005). The trial court also properly considered the need to deter others who want to take advantage of little girls. See *People v Masroor*, 313 Mich App 358, 392; 880 NW2d 812 (2015), aff'd in part, rev'd in part on other grounds by *Steanhouse II*, 500 Mich 453 (2017). See also *People v Snow*, 386 Mich 586, 592; 194 NW2d 314 (1972) ("the deterrence of others from committing like offenses" is a proper consideration in determining an appropriate sentence).

However, the trial court also identified several additional factors that are contemplated by the sentencing guidelines, but the court did not explain why the guidelines did not adequately account for those factors, and, further, the court did not assess points for one of the relevant offense variables. The trial court justified defendant's departure sentence, in part, on the fact that defendant penetrated the victim several times but was not charged with CSC-I. OV 11 addresses "criminal sexual penetration." MCL 777.41(1). A trial court is required to assess 25 points for OV 11 if "[o]ne criminal sexual penetration occurred," MCL 777.41(1)(b), while 50 points are assessed if "[t]wo or more criminal sexual penetrations occurred," MCL 777.41(1)(a). "Even though the guidelines ranges are now advisory, the scoring of the guidelines themselves is mandatory, and the OVs must be assigned the highest number of points applicable." *People v Geddert*, 500 Mich 859, 859; 884 NW2d 575 (2016). The trial court did not score points for OV 11, as it was required to do if applicable, but instead imposed a departure sentence on the basis

that defendant had sexually abused the victim by penile-vaginal penetration on several occasions. In addition, the justification provided by the court does not explain why OV 11 would not adequately account for the criminal sexual penetration, or penetrations, that occurred.

Furthermore, the trial court did not address why OV 4 and OV 10 did not account for the victim's psychological injury and defendant's exploitation of the victim's mental disabilities. In this case, 10 points were assessed for OV 4, "psychological injury to a victim," MCL 777.34(1), and 10 points were assessed for OV 10, "exploitation of a vulnerable victim," MCL 777.40(1). Ten points are assessed for OV 4 if "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). Ten points are assessed for OV 10 if "[t]he offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status." MCL 777.40(1)(b). The trial court failed to explain why the victim's psychological injury and defendant's exploitation of the victim's mental disability were not adequately accounted for by defendant's OV score.

We conclude that remanding is necessary for the trial court either to resentence defendant or to articulate appropriate reasons supporting imposition of a sentence that exceeded the top end of the guidelines range by 12 years, and to address the proportionality of the extent of the particular departure sentence imposed. Although defendant's criminal history, his failure to comply with the terms of his probation, the need to protect society from defendant's likelihood to reoffend, and deterrence of others from committing similar offenses constituted appropriate factors supporting a departure sentence, the trial court failed to articulate why the sentencing guidelines did not adequately account for the penetration that occurred, the victim's psychological injuries, and defendant's exploitation of the victim's mental disabilities. When a trial court's reasons for departing from the sentencing guidelines range are unclear, this Court "cannot substitute its own judgment about why the departure was justified." *People v Smith*, 482 Mich 292, 304; 754 NW2d 284 (2008). "Nor may [this Court] speculate about conceivable reasons for departure that the trial court did not articulate or that cannot reasonably be inferred from what the trial court articulated." *Id*. at 318. Furthermore, our Supreme Court has directed that, when "[not all] reasons articulated by the trial court for departing from the sentencing guidelines w[ere] valid, . . . it [is] unclear whether it would have departed solely [on the basis of the valid reasons], and . . . its reasoning for the extent of departure [is] difficult to ascertain," this Court should remand "for the trial court to either resentence or to further articulate its reasons for departure." *People v Steanhouse*, 504 Mich 969, 969 (2019).

Accordingly, we remand this case for the trial court to either resentence defendant or further articulate its reasoning for the out-of-guidelines sentence imposed. We retain jurisdiction.

/s/ Noah P. Hood
/s/ Kathleen Jansen
/s/ Kathleen A. Feeney

# Court of Appeals, State of Michigan

## ORDER

People of MI v Chad Michael Vanepps

Docket No. 365294

LC No. 21-000255-FH

Noah P. Hood
Presiding Judge

Kathleen Jansen

Kathleen A. Feeney
Judges

Pursuant to the opinion issued concurrently with this order, this case is REMANDED for further proceedings consistent with the opinion of this Court. We retain jurisdiction.

Proceedings on remand in this matter shall commence within 56 days of the Clerk's certification of this order, and they shall be given priority on remand until they are concluded. As stated in the accompanying opinion, we remand this case for the trial court to either resentence defendant or further articulate its reasoning for the out-of-guidelines sentence imposed. The proceedings on remand are limited to this issue.

The parties shall promptly file with this Court a copy of all papers filed on remand. Within seven days after entry, appellant shall file with this Court copies of all orders entered on remand.

The transcript of all proceedings on remand shall be prepared and filed within 21 days after completion of the proceedings.

_____
Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

November 21, 2023
Date

Chief Clerk